IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

TURTLE ISLAND RESTORATION )        CV. NO. 09-00598 DAE-KSC
NETWORK; CENTER FOR        )        CV. NO. 10-00044 DAE-KSC
BIOLOGICAL DIVERSITY; and  )
KAHEA: THE HAWAIIAN        )
ENVIRONMENTAL ALLIANCE,    )
                           )
          Plaintiffs,      )
                           )
     vs.                   )
                           )
UNITED STATES DEPARTMENT   )
OF COMMERCE; NATIONAL      )
MARINE FISHERIES SERVICE;  )
and GARY LOCKE, in his official )
capacity as Secretary of the )
Department of Commerce,    )
                           )
          Defendants,      )
                           )
     and                   )
                           )
HAWAII LONGLINE            )
ASSOCIATION,               )
                           )
          Defendant-Intervenor )
_____ )
HAWAII LONGLINE            )
ASSOCIATION,               )
                           )
          Plaintiff,       )
                           )
     vs.                   )
                           )
NATIONAL MARINE FISHERIES  )
SERVICE; and GARY LOCKE, in )

his official capacity as Secretary of    )
the Department of Commerce,               )
                                          )
                    Defendants.           )
_____          )


### ORDER DENYING WITHOUT PREJUDICE HAWAII LONGLINE ASSOCIATION'S MOTION TO MODIFY STIPULATED INJUNCTION

On June 13, 2010, the Court heard Intervenor-Defendant Hawaii Longline Association's Motion to Modify Stipulated Injunction ("Motion"). Paul H. Achitoff, Esq., appeared at the hearing on behalf of Plaintiffs Turtle Island Restoration Network, Center for Biological Diversity, and KAHEA: The Hawaiian-Environmental Alliance (collectively, "Plaintiffs"); Erik E. Petersen, Esq., and Elena Onaga, Esq., appeared at the hearing on behalf of Defendants United States Department of Commerce, National Marine Fisheries Service, and Gary Locke in his official capacity (collectively, "Federal Defendants"); Jeffrey W. Leppo, Esq., and Steven Y. Otaguro, Esq., appeared at the hearing on behalf of Intervenor-Defendant Hawaii Longline Association ("HLA"). After reviewing the motion and the supporting, opposing, and supplemental memoranda, the Court **DENIES WITHOUT PREJUDICE** Intervenor-Defendant Hawaii Longline Association's Motion to Modify Stipulated Injunction. (Doc. # 147.)

# BACKGROUND

Plaintiffs Turtle Island Restoration Network, Center for Biological Diversity, and KAHEA: The Hawaiian-Environmental Alliance (collectively, "Plaintiffs") are nonprofit environmental organizations and corporations. On December 16, 2009, Plaintiffs filed a Complaint against Defendants United States Department of Commerce, National Marine Fisheries Service ("NMFS"), and Gary Locke ("Locke") in his official capacity as Secretary of the Department of Commerce (collectively, "Federal Defendants"). (Doc. # 1.) On January 5, 2010, Hawaii Longline Association ("HLA") filed a motion to intervene in the lawsuit (Doc. # 5), which U.S. Magistrate Judge Kevin S.C. Chang granted on February 12, 2010 (Doc. # 20). The Court dismissed Plaintiffs' Complaint without prejudice on June 24, 2010, as a result of certain pleading deficiencies (Doc. # 82), and Plaintiffs filed a First Amended Complaint ("FAC," Doc. # 84) on the same day.

As recounted in the First Amended Complaint and the parties' various filings, management of the Hawaii longline fishery (the "Fishery") has been substantially litigated. This particular action stems from the December 10, 2009 Final Rule issued by NMFS implementing Amendment 18 to the Fishery Management Plan. (FAC ¶ 73.) Among other things, the Final Rule increased the annual number of allowable incidental interactions that occur between the fishery

3

and loggerhead sea turtles. The lawsuit challenges the validity of the Biological

Opinion that NMFS prepared to assess the Final Rule's impact on threatened and

endangered species ("2008 BiOp") and the associated Incidental Take Statement

("ITS").

Plaintiffs advance six causes of action in the First Amended

Complaint. Federal Defendants have allegedly violated the Migratory Bird Treaty

Act ("MBTA"), 16 U.S.C. § 703 et seq., Sections 7 and 9 of the Endangered

Species Act ("ESA"), 16 U.S.C. § 1531 et seq., the Marine Mammal Protection Act

("MMPA"), 16 U.S.C. § 1361 et seq., the Magnuson-Stevens Fishery Conservation

and Management Act ("MSA"), 16 U.S.C. § 1801 et seq., and the Administrative

Procedure Act ("APA"), 5 U.S.C. § 701 et seq. (Id. ¶¶ 77–97.)

On April 5, 2010, Plaintiffs' action was consolidated with a case filed

on January 22, 2010 by HLA against Locke and NMFS. (Cv. No. 10-00044, Doc.

# 24.) HLA's suit sought declaratory and injunctive relief based on NMFS's

alleged failure to issue determinations and authorizations pursuant to the Marine

Mammal Protection Act and the Endangered Species Act. (Cv. No. 10-00044,

Doc. # 1.) On December 16, 2010, HLA, NMFS, and Locke stipulated to

voluntary dismissal of HLA's Complaint in the consolidated action. (Cv. No. 10-00044, Doc. # 29.)

On October 13, 2010, Plaintiffs and Federal Defendants filed a Joint Motion to Enter Stipulated Injunction as an Order of the Court ("Joint Motion"), which in essence is a proposed consent decree that would result in dismissal of all of Plaintiffs' claims with prejudice.[1] ("Joint Mot.," Doc. # 102.) At the December 15, 2010 hearing on the Joint Motion, the Court, concerned that it did not have sufficient information to analyze the proposed consent decree, directed the parties to file supplemental briefing as to whether the proposed consent decree was fair, reasonable, and equitable and in the public interest.

On November 12, 2010, HLA filed a Local Rule 74.1 Appeal from Magistrate Judge's Non-Dispositive Discovery Order,[2] which arose from HLA's

---

[1] On the same day, and in response to Plaintiffs' and Federal Defendants' filing of the Joint Motion, HLA filed a Motion for Leave to File First Amended Complaint (Doc. # 103) as well as a Motion to Shorten Time for Hearing on its motion (Doc. # 104). After Magistrate Judge Chang denied the Motion to Shorten Time (Doc. # 107), HLA withdrew its Motion for Leave to File First Amended Complaint (Doc. # 115). On October 26, 2010, HLA filed a Complaint in a separate action against NMFS and Locke, alleging that the proposed consent decree contained in the Joint Motion is contrary to law and violative of the APA, the MSA, the ESA, and NEPA. (Cv. No. 10-00627, Doc. #1.)

[2] HLA also filed a Motion to Shorten Time (Doc. # 120), which this Court denied on November 15, 2010 for failure to show good cause (Doc. # 123).

request to take five time-limited depositions of the Federal Defendants. (Doc. # 119.) HLA asserted that these five depositions were necessary for it to acquire information and evidence to oppose the Joint Motion, namely HLA sought to uncover evidence as to whether the proposed consent decree is "fair, reasonable, and equitable and does not violate the law or public policy." (Id. at 1, 4.) Federal Defendants objected to the proposed depositions (id. at 2–3), and on November 4, 2010, HLA and Federal Defendants submitted letter briefs to Magistrate Judge Chang, pursuant to the procedure set forth in Local Rule 37.1 (see Doc. # 116). On November 10, 2010, Magistrate Judge Chang sustained Federal Defendants' objection and prevented HLA's taking of the five proposed depositions. (Doc. # 117.) On December 17, 2010, this Court affirmed Magistrate Judge Chang's decision, finding that it was neither clearly erroneous nor contrary to law. (Doc. # 132.)

On January 31, 2011, this Court issued an Order granting Plaintiffs' and Federal Defendants' Joint Motion ("January Order"). ("Jan. Order," Doc. # 139; see also "Consent Decree," Doc. # 139-1.) The Court concluded that the proposed consent decree was fair, reasonable, and equitable and did not violate the law or public policy. (Jan Order at 9.) The consent decree itself, in part, vacated the 2008 BiOp and remanded the matter to NMFS. (See Consent Decree.) On

6

March 30, 2011, HLA filed an appeal challenging the January Order.  (Doc.

# 140.)  The appeal is currently pending.

On April 21, 2011, HLA filed the instant Motion to Modify Stipulated

Injunction.  ("Mot.," Doc. # 147.)  HLA specifically requests that the Court

modifies paragraph six of the Consent Decree such that NMFS would be required

to complete a new Biological Opinion regarding FMP Amendment 18 by July 31,

2011.[3]  (Id. at 14.)  On May 16, 2011, the Federal Defendants filed their

Opposition to the Motion.  ("Fed. Defs. Opp'n," Doc. # 152.)  The same day

Plaintiffs filed their Opposition to the Motion.  ("Pls. Opp'n," Doc. # 153.)  On

May 23, 2011, HLA filed its Reply.  ("Reply," Doc. # 156.)

---

[3] Paragraph six now states:

NMFS shall issue a new biological opinion and a new incidental take
statement for the Hawaii-based shallow-set longline fishery no later
than 135 days after NMFS' final determination on its proposed listing
of nine distinct population segments of listed loggerhead sea turtles.
75 Fed. Reg. 12598 (March 16, 2010). The purpose of preparing the
new biological opinion includes, but is not necessarily limited to,
reconsideration of the issues raised by Plaintiffs in the instant
litigation.

(Consent Decree ¶ 6.)

<u>STANDARD OF REVIEW</u>

A court retains the power to modify a consent decree in certain circumstances over the objection of a signatory. <u>Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland.</u>, 478 U.S. 501, 518 (1986) (citing <u>United States v. Swift</u>, 286 U.S. 106, 114 (1932) ("We are not doubtful of the power of a court of equity to modify an injunction in adaptations to changed conditions, though it was entered by consent.")). "Although . . . a district court should exercise flexibility in considering requests for modification of an institutional reform consent decree, it does not follow that a modification will be warranted in all circumstances." <u>Rufo v. Inmates of Suffolk Cnty. Jail</u>, 502 U.S. 367, 383 (1992). Instead, "a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree." <u>Id.</u>; <u>see also</u> <u>United States v. Asarco, Inc.</u>, 430 F.3d 972, 979 (9th Cir. 2005) (same). A party seeking modification of a consent decree can meet this initial burden by showing either a significant change either in factual conditions or in law. <u>Rufo</u>, 502 U.S. at 384; <u>Asarco</u>, 430 F.3d at 979. "Ordinarily, however, modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." <u>Rufo</u>, 502 U.S. at 384; <u>see also</u> <u>Labor/Community Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth.</u>, 564 F.3d 1115, 1120 (9th Cir.

2009) (noting a moving party must demonstrate that the change was not "anticipated at the time it was entered into [the] decree" (quoting <u>Asarco</u>, 430 F.3d at 979)).

Once a court is satisfied that a significant change in circumstances warrants revision of the decree "the court should consider whether the proposed modification is suitably tailored to the changed circumstance." <u>Id.</u> at 383; <u>see also</u> <u>Asarco</u>, 430 F.3d at 979. Specifically, "if the movant cites significantly changed factual conditions . . . it must additionally show that the changed conditions make compliance with the consent decree more onerous, unworkable, or detrimental to the public interest." <u>Asarco</u>, 430 F.3d at 979 (quotations, citations, and modifications omitted); <u>see also</u> <u>Labor/Community Strategy Ctr.</u>, 564 F.3d at 1120 (same).

<u>DISCUSSION</u>

Before reaching the merits of HLA's request to modify the Consent Decree, the Court must first consider whether the pending appeal of its January Order deprives the Court of subject matter jurisdiction to revise the Consent Decree.

Generally speaking, once notice of appeal is filed a district court is divested of jurisdiction over the matters being appealed. <u>Griggs v. Provident</u>

Consumer Disc. Co., 459 U.S. 56, 58 (1982); Natural Res. Def. Council, Inc. v. Sw. Marine Inc., 242 F.3d 1163, 1166 (9th Cir. 2001). This rule is a "judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time." In re Thorp, 655 F.2d 997, 998 (9th Cir. 1981) (citations and quotations omitted); Sw. Marine Inc., 242 F.3d at 1166. This rule is not, however, absolute. In re Padilla, 222 F.3d 1184, 1190 (9th Cir. 2000). Indeed, Federal Rule of Civil Procedure ("Rule") 62(c), the Rule pursuant to which HLA has requested relief, codifies one such exception. It provides:

> While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

Fed. R. Civ. P. 62(c). This Rule "grants the district court no broader power than it has always inherently possessed to preserve the status quo during the pendency of an appeal." Sw. Marine Inc., 242 F.3d at 1166. It does not, however, "restore jurisdiction to the district court to adjudicate anew the merits of the case." Id.; see also McClatchy Newspapers v. Cent. Vally Transp. Union No. 46, Int'l Typographical Union, 688 F.2d 731, 734 (9th Cir. 1982). "Thus, any action taken

pursuant to Rule 62(c) may not materially alter the status of the case on appeal."
Sw. Marine Inc., 242 F.3d at 1166.

Plaintiffs argue this Court lacks jurisdiction for two reasons. First, Plaintiffs assert that the Consent Decree is not an injunction for purposes of establishing this Court's jurisdiction under Rule 62(c). (Pls. Opp'n at 2.) In the alternative Plaintiffs assert that even if the Consent Decree is an injunction, HLA's motion impermissibly seeks to alter the status quo pending the appeal. (Pls. Opp'n at 5.) As discussed below, the Court finds the Consent Decree provided injunctive relief sufficient to trigger jurisdiction per Rule 62(c), but also concludes the relief HLA seeks would impermissibly alter the status quo. The Court therefore DENIES HLA's motion without prejudice.

I.     The Consent Decree is Injunctive in Nature

Rule 62(c), by its terms, requires that the appealed matter relate to an injunction. See Fed. R. Civ. P. 62(c). Plaintiffs argue that although "the parties' agreement was styled a 'stipulated injunction,' this does not automatically confer upon the Court's consent decree approving the agreement the effect of an injunction." (Pls. Opp'n at 3.) Instead, according to Plaintiffs, "the decree confirms, and gives the Court's imprimatur to an agreement the parties negotiated, and is in substance a vacatur and remand. It does not enjoin any party to do, nor

11

refrain from doing, anything beyond performing the terms of the parties'

agreement . . . ." (Id.)  Specifically, because the status quo ante was restored while

NMFS reexamines the environmental impacts of Amendment 18, as is required

whenever a regulation is vacated in connection with a remand, the Consent Decree,

according to Plaintiffs, was in effect a vacatur and remand.  (Id. at 4.)  The Court is

not persuaded.

First, a consent decree differs greatly from a vacatur and remand

order.  As explained in the January Order:

> "[A] consent decree has attributes of both a contract and a judicial
> act." Olney v. United States, 543 F.3d 1168, 1173–74 (9th Cir. 2008).
> "Consent decrees entered in federal court must be directed to
> protecting federal interests." Frew v. Hawkins, 540 U.S. 431, 437
> (2004).  The Supreme Court has characterized a consent decree as "an
> agreement that the parties desire and expect will be reflected in, and
> be enforceable as, a judicial decree that is subject to the rules
> generally applicable to other judgments and decrees." Rufo v.
> Inmates of Suffolk Cnty. Jail, 502 U.S. 367, 378 (1992); Frew, 540
> U.S. at 437 (same).  Further, "[a] consent decree is a judgment, has the
> force of res judicata, and it may be enforced by judicial sanctions,
> including . . . citations for contempt." Randolph, 736 F.2d at 528.  A
> court may also "modify a consent decree in certain circumstances over
> the objection of a signatory." Local No. 93, 478 U.S. at 518 (citation
> omitted).  Accordingly, although a contract between parties, a consent
> decree's enforcement is entirely dependent upon judicial act.

(Jan. Order at 13.)  While it is true, in part, that the Consent Decree requires the

NMFS to revisit conclusions it would have to revisit had there been a vacatur and

remand, it simply does not follow that the Consent Decree is, by its terms, a vacatur and remand.[4]  This is especially so given these characteristics unique to a Consent Decree.

Instead, the Court must look to the Consent Decree's substantial effect to determine whether the relief the Court granted is injunctive in nature.  See Armstrong v. Wilson, 124, F.3d 1019, 1021 (9th Cir. 1997) (concluding that a court must "look to [the order's] substantial effect rather than its terminology" in determining whether relief granted was injunctive in nature).  An injunction is defined as "[a] court order commanding or preventing an action."  See Black's Law Dictionary (8th ed. 2004); see also Pit River Tribe v. U.S. Forest Serv., 615 F.3d 1069, 1078 (9th Cir. 2010) (defining injunction as the same).  Indeed, in determining whether a consent decree provided injunctive relief, the Ninth Circuit has stated that "[i]njunctions are orders that are directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by a complaint in more than preliminary fashion."  Thompson v. Enomoto, 815 F.2d 1323, 1326 (9th Cir. 1987) (quotations and citations omitted).  In Thompson, the court concluded that the consent decree at issue was equivalent to

_____

[4] Indeed, Plaintiffs have provided no case law in support of this proposition, nor can the Court find any.

an injunction because it " prescribe[d] conduct . . . and compel[led] compliance."

Id.  Moreover, non-compliance was punishable by contempt.  Id.  More recently,

the Ninth Circuit has stated:

> The consent decree is an injunction. A judgment issued by a court in
> the exercise of its equitable or admiralty jurisdiction is called a decree,
> and when a decree commands or prohibits conduct, it is called an
> injunction. Consent decrees differ from contested injunctions in that,
> instead of being won in contested litigation, they are issued by the
> court pursuant to an agreement of the parties.

Gates v. Shinn, 98 F.3d 463, 468 (9th Cir. 1996); see also Gilmore v. People of

California, 220 F.3d 987, 1000–01 (9th Cir. 2000) (noting a consent decree

"provides for injunctive relief according to terms agreed to by the parties").  An

analysis of the terms and requirements of the Consent Decree make clear that the

Consent Decree "commands or prohibits conduct" and is therefore an injunction.

See Gates, 98 F.3d at 468.

First, considering paragraph three, the Court reinstates portions of a

prior biological opinion and incidental take statement.  (Consent Decree ¶ 3.)  The

Ninth Circuit has on at least one occasion characterized the reinstatement of a prior

agency rule as injunctive in nature.  See California ex rel. Lockyer v. U.S. Dep't of

Agric., 575 F.3d 999, 1019–20 (9th Cir. 2009) (finding that the district court's

decision to grant injunction "reinstating" an earlier rule was appropriate).  Indeed,

paragraph three "commands conduct" and, therefore, provides injunctive relief.

Gates, 98 F.3d at 468.

Similarly, paragraph four mandates that "as an order of the Court

NMFS shall initiate appropriate rulemaking to implement the amount of annual

incidental take for loggerhead and leatherback sea turtles as set forth in the 2004

Regulations identified in Paragraph 3."  (Consent Decree ¶ 4 (emphasis added).)

This paragraph is unambiguous; the Court ordered NMFS to initiate appropriate

rulemaking.  In other words, this paragraph "prescribe[d] conduct . . . and

compel[led] compliance."  Thompson, 815 F.2d at 1326.  Indeed, the NMFS

clearly understood this paragraph to be injunctive in nature.[5]  See 76 Fed. Reg.

13297 (Mar. 11, 2011) ("The U.S. District Court for the District of Hawaii issued

an Order that directs NMFS to revise the annual interaction limit for loggerhead

turtles from 46 to 17.  The intent of the final rule is to ensure that the regulations

promulgate the revised limit as required by the Court Order." (emphasis added)).

Paragraph four also plainly provides injunctive relief.

---

[5] Notably, the Federal Defendants do not contest that the Consent Decree provided injunctive relief.  Indeed, they have represented to the Ninth Circuit on appeal that the Consent Decree was injunctive in nature.  (Reply at 3 n.2.)

Paragraph five of the Consent Decree prohibits NMFS from increasing incidental take for the shallow-set fishery, except through specified process. (Consent Decree ¶ 5.) By its plain terms, this prevents NMFS from taking any contrary action. Accordingly this paragraph is also injunctive in nature. See Thompson 815 F.2d at 1326; Gates, 98 F.3d at 468.

Finally, paragraph six requires NMFS to "issue a new biological opinion and a new incidental take statement" for the shallow-set fishery "no later than 135 days after NMFS' final determination on its proposed listing of nine distinct population segments of listed loggerhead sea turtles[.]" (Id. ¶ 6.) This paragraph mandates agency process and extends the time period for doing so beyond applicable law and therefore effectuates injunctive relief. See Thompson 815 F.2d at 1326; Gates, 98 F.3d at 468. In sum, because the Consent Decree plainly "commands or prohibits conduct," it can only be characterized as an injunction. Gates, 98 F.3d at 468.

Moreover, federal courts outside of this District have considered Consent Decrees granting similar relief to be injunctive in nature for the purposes of Rule 62(c). For instance, in Dillard v. City of Foley, 926 F. Supp. 1053 (M.D. Ala. 1995), the court approved and entered a consent decree settling a dispute

between a class of African-American plaintiffs and the City of Foley.  Id. at 1073.

Per the decree, "the parties agreed that Foley would establish a non-discriminatory

annexation policy by holding referenda in seven areas surrounding Foley to

determine whether the residents of those areas wanted to be annexed to the city."

Id.  The consent decree was appealed and the parties sought to stay annexation,

arguing, as here, that "Rule 62(c) is not the appropriate vehicle for obtaining a stay

of the consent decree, because the court's . . . orders do not constitute an

interlocutory or final judgment granting an injunction.".  Id. at 1073–74.

The court noted that the parties "seem to view the consent decree as a

mere 'approval' of an annexation plan for Foley, and not as an injunction directing

the parties to engage or refrain from engaging, in specific behaviors or actions."

Id. at 1074.  The court went on to discuss the myriad orders contained in the

consent decree and found that "[t]he consent decree does not constitute mere

'approval' of the parties' plan but rather requires a party to do or refrain from

doing something that is an integral part of the very matter in litigation."  Id. at 1075

(citations and quotations omitted).  The court concluded that "the consent order is

clearly directed at the parties, is sufficiently specific such that those who obey [it]

will know what the court intends to require and what it means to forbid, as to be enforceable." Id.[6]

Similarly here, the Consent Decree is more than sufficiently specific such that "those who must obey [it] will know what the court intends to require." Id.; see also Thompson, 815 F.2d at 1326 ("Injunctions are orders that are directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by a complaint in more than preliminary fashion.") The Consent Decree is not "mere approval" of an agreement between the parties but requires compliance under penalty of judicial sanction. Randolph, 736 F.2d at 528; see also Thompson 815 F.2d at 1326 (characterizing a consent decree as an injunction, in part, because non-compliance was punishable by contempt). Indeed, as reviewed above, the Consent Decree is clear and unambiguous in what the Court requires of the parties. In sum, the Consent Decree here can only be characterized

_____

[6] Another court reached the same conclusion in Patterson v. Newspaper & Mail Deliverers' Union, 802 F. Supp. 1053 (S.D.N.Y. 1992). There the parties requested restoration of a consent decree pending an appeal of the court's decision to vacate the Consent Decree per Rule 62(c). Id. at 1056. The Consent Decree there prohibited a mail delivering union in New York from engaging in "any act or practice which has the purpose or the effect of discriminating against any individual or class of individuals . . . on the basis of race, color, or national origin." Id. at 1054. There the Court did not hesitate to qualify the Consent Decree as injunctive in nature such that Rule 62(c) applied. See id. at 1056–57.

as providing injunctive relief.[7]  Accordingly, the Court may grant injunctive relief per Rule 62(c) to maintain the status quo.

II.     Altering the Status Quo

As discussed, Rule 62(c) carves a narrow exception to the rule that an appeal generally divests a district court of jurisdiction—a district court may take action to preserve the status quo.  See Sw. Marine Inc., 242 F.3d at 1166; Sec. and Exch. Comm'n v. Am. Capital Invs., Inc., 98 F.3d 1133, 1146 (9th Cir. 1996); Small v. Operative Plasterers' and Cement Masons, 611 F.3d 483, 495 (9th Cir. 2010).  Rule 62(c), however, is not a carte blanche to "adjudicate anew the merits of the case after either party has invoked its right of appeal and jurisdiction has passed to an appellate court."  McClatchy, 686 F.2d at 734.  Indeed, a district court "may not finally adjudicate substantial rights directly involved in the appeal".  Id. at 735; Sw. Marine, 242 F. 3d at 1166.  Confusion would otherwise ensue "from having the same issues before two courts simultaneously."  See Nat'l Ass'n of

---

[7] Indeed, all parties have heretofore referred to the Consent Decree as a Stipulated Injunction, including twenty-seven times in the document itself.  (Reply at 4.)  Moreover, as noted supra, the Federal Defendants have plainly stated to the Ninth Circuit that it believes the Court granted injunctive relief.  (Id. at 3.)  It is therefore clear that the parties, as well as the Court, were in agreement that the Consent Decree provided injunctive relief at the time the Court issued its January Order.

Home Builders v. Norton, 325 F.3d 1165, 1167 (9th Cir. 2003) (citing Sw. Marine, 242 F.3d at 1166.)

HLA argues that its request falls within the ambit of Rule 62(c). Specifically, it contends that "granting HLA's requested relief in no way alters the status quo of the appeal, but rather holds the consenting parties to the bargain they struck and the representations they made to this Court in procuring the Stipulated Injunction." (Reply at 6.) HLA's argument is premised upon the alleged representations that Plaintiffs and Federal Defendants made to this Court in stating that the NMFS would promptly engage in consultation and issue a new incidental take statement by July 31, 2011. (Id. at 7.) The Court is not persuaded.

The fundamental flaw with the HLA's request is that it would substantively change the terms of the Consent Decree while those very terms are at issue before the Ninth Circuit. HLA here requests the Court modify the terms of the Consent Decree to require NMFS to issue a new Biological Opinion and associated incidental take statement for the shallow-set fishery by July 31, 2011. (Mot. at 14.) The Consent Decree in its present form requires NMFS to issue a "new biological opinion and new incidental take statement no later than 135 days after NMFS' final determination on its proposed listing of nine distinct population segments of listed loggerhead sea turtles." (Consent Decree ¶ 6.) The Consent

Decree neither imposes nor contemplates limiting the amount of time NMFS has to issue a decision regarding the loggerhead subpopulations under the ESA. The Consent Decree, therefore does not impose a time limit on when the Biological Opinion and incidental take statement must be issued until the NMFS first issues a decision regarding the loggerhead subpopulations under the ESA. The Court, in its January Order, contemplated these precise implications of paragraph six and concluded it was nonetheless acceptable.[8] (See January Order at 29–32.) HLA disagreed and appealed. Thus, one of the precise issues on appeal before the Ninth Circuit is whether paragraph six, in its present form is "fair, reasonable, and equitable." (See January Order at 9.) Irrespective of the representations made by the Federal Defendants or the Plaintiffs to this Court, to alter materially and impose a definite and precise time limit on the NMFS with respect to issuing a Biological Opinion and incidental take statement would plainly result in adjudication of "substantial rights directly involved in the appeal." McClatchy, 686 F.2d at 735. Specifically, paragraph six, currently under scrutiny in the Ninth Circuit, would be altered. This is plainly prohibited. Sw. Marine, 242 F. 3d at 1166.

---

[8] The Court cautioned, however, that it would not tolerate perpetual delays by the NMFS in reaching a decision as to the loggerhead sea turtle status. (January Order at 13–14 n.7)

HLA relies upon <u>Sw. Marine</u> to argue that the status quo would not be affected. (Reply at 6–7.) This case is readily distinguishable and actually bolsters the conclusion that HLA's request would materially alter the status quo on appeal. There the district court issued an injunction requiring one party, Southwest Marine, to test a water column for pollutants and to capture all pier storm water runoff "in a reasonably expeditious manner." <u>Id.</u> at 1165. The injunction was stayed by the district court pending submission of additional briefing on whether the water testing should occur at only the surface and whether there were alternatives to water capture. <u>Id.</u> Southwest Marine appealed before further briefing and argument were submitted to the court. <u>Id.</u> Notwithstanding the appeal, the court modified the injunction, specifying that testing should take place at the surface at a "microlayer" and substituting an eighteen month deadline for "reasonably expeditious." <u>Id.</u>

The Ninth Circuit concluded that these were "minor adjustments that effectuated the underlying purposes of the original requirements." <u>Id.</u> at 1167. Moreover, the modifications "left unchanged the core questions before the appellate panel deciding the consolidated appeal: whether the district [court] could permissibly (1) require any water column testing . . . or (2) require the construction

of a pier storm water capture."  Id. at 1167.  The Ninth Circuit employed a

hypothetical test to bolster this conclusion, stating:

> If the core requirements of water column testing and pier storm water
> capture were ultimately reversed on appeal, the "microlayer" testing
> requirement and the 18-month construction deadline would also
> effectively be reversed, leaving none of Southwest Marine's
> substantial rights affected after the conclusion of the consolidated
> appeal.

Id. at 1167.  For this reason, the Ninth Circuit held the district court had

jurisdiction to modify the underlying injunction.  Id.

The same cannot be said of the instant case.  Presently at issue before

the Ninth Circuit is whether the terms of the Consent Decree, as they now exist, are

"fair, reasonable, and equitable."  Here applying the same hypothetical test used by

the Ninth Circuit in Sw. Marine, a very different result is reached.  At present there

is, in effect, no definite time limit with respect to the issuance of the Biological

Opinion and intake statement.[9]  HLA's requested modifications would establish

---

[9] The court acknowledges that the Consent Decree requires NMFS to issue a
"new biological opinion and new incidental take statement no later than 135 days
after NMFS' final determination its proposed listing of nine distinct population
segments of listed loggerhead sea turtles."  (Consent Decree ¶ 6.)  Because,
however, the NMFS is not required to make a final determination as to the
loggerhead sea turtles population segments within a specified amount of time,
NMFS could conceivably delay issuing a new Biological Opinion and incidental
take statement for some time.

one.  If the Ninth Circuit found on appeal the terms of the Consent Decree, as they exist now, were not "fair, reasonable, and equitable," but this Court also granted HLA's motion, the Ninth Circuit's decision would not, in effect, reverse the modifications as in Sw. Marine.  In other words, if the Ninth Circuit found that paragraph six in its present form was unacceptable, it would not logically follow that HLA's proposed modifications to paragraph six would also be unacceptable as the modifications are materially different from the Consent Decree's present terms.

The Court finds the instant case closer to Small.  There the district court issued an injunction proscribing a union from "in any manner or by any means threatening, coercing, or restraining [a company] where an object thereof is to force or require [the company] to assign work to [the union.]"  611 F.3d at 495.

After appeal to the Ninth Circuit, the district court deleted this requirement from the injunction.  Id.  The Ninth Circuit found simply that "[t]his modification altered the status quo by removing the prohibition on [the union] . . . pending final adjudication.  We therefore vacate the modification order . . . and reinstate the injunction as originally granted."  Id.  Similarly here, HLA asks the Court to remove paragraph six from the Consent Decree and replace it with a different requirement.  As illustrated, this is prohibited.  McClatchy, 686

F.2d at 735; Sw. Marine, 242 F. 3d at 1166; Small, 611 F.3d at 495.[10]  HLA's

motion cannot, therefore be granted.

Finally, the parties have represented to the Court that the Ninth Circuit

has sua sponte issued an Order to Show Cause why HLA's appeal should not be

dismissed for lack of jurisdiction.  (Pls. Opp'n at 4–5 n.1.)  As a result, subject

matter jurisdiction might soon be restored to the Court.  Once that happens, the

Court will have the authority and ability to address the merits of HLA's request.

Accordingly, the Motion is **DENIED WITHOUT PREJUDICE**.  HLA may refile

its motion once subject matter jurisdiction has been restored to this Court.

III.  Docket Management

As an alternative finding, assuming arguendo the Court had

jurisdiction to grant HLA the relief it seeks, it would still decline to do so at this

time.  A district court has control to "efficiently and economically control its

docket" as it sees fit.  See Landis v. North American Co, 299 U.S. 248, 255 (1936);

---

[10] Finally, the Court notes that both in Dillard and Patterson, the district
courts refused to modify the terms of a consent decree per Rule 62(c) pending
appeal of the their decisions.  See Dillard, 926 F. Supp. at 1075 ("[T]he
modifications or partial stay requested by the movants would violate the very
underpinning of the parties' agreement . . . .  A substantive modification of a
decree is impermissible."); Patterson, 802 F. Supp. at 1057 ("Because the status
quo . . . is that the Consent Decree is of no force and effect, restoration of the
Decree based on [new factual] allegations . . . would be beyond the authority of
this Court.")

see also Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 863–64 (9th Cir. 1979) (finding a court may proceed in a manner that is "efficient for its own docket and the fairest course for the parties . . ."). For the same reasons outlined above, the Court would not rule on HLA's Motion even assuming it had jurisdiction to do so. The potential for confusion and conflation of issues between this Court and the Ninth Circuit is simply too great to warrant resolving the Motion at this time. For instance, if the Court granted the relief HLA requested, and then the Plaintiffs and/or the Federal Defendants appealed, there could potentially be multiple panels in the Ninth Circuit working on appeals relating to the same Consent Decree. Moreover, this Court would be left without any guidance from the Ninth Circuit on whether: 1) the Consent Decree in its current form is fair, reasonable and equitable and 2) whether the Consent Decree as modified would be fair reasonable and equitable. The confusion that could potentially ensue leads the Court to believe it would be best simply to wait until the Ninth Circuit rules on the Court's January Order or dismisses the appeal. At that point the Court will be more than willing to revisit this issue upon application by motion.

<u>CONCLUSION</u>

For these reasons, the Court **DENIES WITHOUT PREJUDICE**

Intervenor-Defendant Hawaii Longline Association's Motion to Modify Stipulated

Injunction.  (Doc. # 147.)

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 14, 2011.

_____
David Alan Ezra
United States District Judge

<u>Turtle Island Restoration Network, et al. v. U.S. Department of Commerce, et al.</u>,
CV No. 09-00598 DAE-KSC; CV No. 10-00044 DAE-KSC; ORDER DENYING
WITHOUT PREJUDICE HAWAII LONG LINE ASSOCIATION'S MOTION TO
MODIFY STIPULATED INJUNCTION